UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION            MASTER FILE NO. 12-md-02311

_____

In Re: Wire Harness Cases            HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

All Actions            2:12-cv-00100

_____/

## OPINION AND ORDER DENYING TRAM, INC. AND TOKAI RIKA CO., LTD.'S MOTION TO DISMISS ALL ACTIONS

Before the Court is Defendant TRAM, Inc. and Tokai Rika Co., Ltd.'s motion pursuant to Rule 12(b)(6) (Case No. 12-02311, Doc. No. 231) to dismiss all claims advanced against them in the Direct Purchasers Plaintiffs' ("DPPs") Consolidated Amended Class Action Complaint (Doc. No. 86), the Automobile Dealer Plaintiffs' ("ADPs") Consolidated Class Action Complaint (Doc. No. 85), and the End-Payor Plaintiffs' ("EPPs") Corrected Consolidated Amended Class Action Complaint (Doc. No. 174). The Court heard oral argument on December 5 and 6, 2012, and at the conclusion of the hearing, took this matter under advisement. For the reasons that follow, the Court **DENIES** the motion.

## I.  INTRODUCTION AND FACTUAL BACKGROUND

On February 23, 2010, the Federal Bureau of Investigation raided TRAM, Inc. which is located in Plymouth Michigan.  The  FBI conducted three raids on the same day, and the subjects of the raids are Defendants in this litigation.  According to the Department of Justice, after the February 2010 raid, it became aware that a company executive directed employees to delete electronic data and destroy paper documents.

Prior to oral argument on Defendants' motion, the Court was asked by EPPs to take judicial notice of two documents, which related to Tokai Rika Co., Ltd.'s ("TR") guilty plea:  a criminal information; and a press release from the Justice Department.  At oral argument, counsel for Defendants informed the Court that Defendants had no objection to the Court taking judicial notice, and those matters have been reviewed.

In its agreement to plead guilty, TR waived indictment and agreed to plead guilty to a two-count Information, which charged TR in Count I with:

> participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of Heater Control Panels ("HCPs") sold to Toyota Motor Corporation and Toyota Motor Engineering & Manufacturing North America, Inc. . .from as early as September 2003 until at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

(See Case No. 12-cr-20711, Doc. No. 11 at 3).  Count Two of the Information charged that on or before February 2010:

> An executive of the defendant, acting on the defendant's behalf, knowingly and corruptly attempted to persuade and did persuade employees of the defendant, with intent to cause and induce them to alter, destroy, mutilate, and conceal objects with intent to impair the objects' integrity and availability for use in an official proceedings, that is the federal grand jury sitting in the Eastern District of Michigan investigating, among other things, possible federal criminal antitrust violations occurring

> in the automotive parts industry and committed by the defendant and others, in violation of 18 U.S.C. § 1512(b)(2)(B).

(Id.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

23In Twombly, the Supreme Court considered the pleading requirements needed to withstand a motion to dismiss relative to a Section 1 Sherman Act claim. It held that

the complaint must contain enough factual matter to "plausibly suggest" an agreement:

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

550 U.S. at 556.

### III. ANALYSIS

In addition to joining in the Collective Defendants' motions to dismiss the complaints TRAM, Inc. ("TRAM") and TR filed a motion asking the Court to dismiss them from the complaints in this wire harness antitrust litigation for failure to state a claim. Defendants maintain that DPPs, ADPs, and EPPs have failed to allege sufficient facts to meet the minimum requirements for pleading an antitrust conspiracy. When the motion was filed, TR had not been served with the complaint and specified that it did not waive any defense based upon lack of personal jurisdiction, improper venue, or inadequacy of service of process. (Doc. No. 231, p. 1 n.1).

The basis of their motion to dismiss turns on the sufficiency of the allegations in light of TR's guilty plea, and the corporate relationship between the two entities. According to TRAM and TR, only four allegations in the complaints mention them, either individually or collectively. Those allegations are that TRAM and TR manufactured, marketed, or sold wire harness systems (Doc. No. 86 at ¶¶ 61-62; Doc. No. 85 at ¶¶ 121-122; Doc. No. 174 at ¶¶ 115-116); that TRAM is a subsidiary of and wholly owned and/or controlled by TR (Doc. No. 86 at ¶¶ 61-62; Doc. No. 85 at ¶¶ 121-122; Doc. No. 174 at ¶¶ 115-116); that the U.S. government raided TRAM's office on

4

February 23, 2010 (Doc. No. 86 at ¶ 116; Doc. No. 85 at ¶ 175; Doc. No. 174 at ¶ 170); and that TR supplies Toyota. (Doc. No. 86 at ¶ 149).

TRAM and TR assert that even if they are market participants, neither Defendant appears on the market share charts included in the complaints. Nor do the complaints allege which wire harness systems product they make or which product was purchased.

The Court rejects Defendants' efforts to isolate each allegation for separate analysis rather than considering the complaints as a whole. See In re Southeastern Milk Antitrust Litig., 555 F.Supp. 2d 934, 943-44 (E.D. Tenn. 2008) (examining allegations of conspiracy to set prices and noting that the district court should not "dismember" the complaint in analyzing the sufficiency). The Court, in viewing the complaints as a whole, finds sufficient allegations regarding the existence of the antitrust conspiracy. Several of the defendants named in this litigation have pleaded guilty, thereby confirming the existence of and illegal price-fixing conspiracy. The complaints notify TRAM and TR what wrongdoing they are alleged to have committed and provide an adequate basis for Defendants to respond. See Starr v. Sony BMG Music Entertainment, 592 F.3d 314, 325 (2d Cir. 2010) (rejecting the contention that Twombly requires a plaintiff to identify specifically the time, place, or person related to each allegation of conspiracy); In re Graphics Processing Units Antitrust Litig., 527 F. Supp.2d 1011, 1024 (N.D. Cal. 2007) (confirming that "specific back-room meetings between specific actors at which specific decisions were made" need not be alleged). Viewed in the light most favorable to Plaintiffs, their complaints allege, and the guilty pleas provide, ample evidence that a conspiracy in the wire harness market existed. Likewise the allegations of market conditions that show a concentration of market

shares, high barriers to entry, and the capability of Defendants producing products for use in any vehicle, when considered in light of the alleged opportunities of Defendants to conspire at auto and industry trade shows, satisfy Twombly. The allegations render the conduct alleged plausible.

The sufficiency of the allegations are not undermined by the fact that the guilty plea does not link TR or TRAM to wire harness systems. Plaintiffs did not bring their complaints based on TR's admission that it fixed prices of heater control panels because there had been no guilty plea when DPPs, ADPs, and EPPs filed their complaints. Nevertheless, TR has pleaded guilty not only to price fixing heater control panels, but also to obstruction of justice. Employees destroyed documents and electronic data, and according to Count Two of the Information, the intent was to render the information unavailable for use in the investigation of "antitrust violations occurring in the automotive parts industry." There is no indication that the documents were related only to heater control panels. Moreover, TR's guilty plea does not establish immutable boundaries within which antitrust claims alleged by DPPs, ADPs or EPPs must remain. See In re Packaged Ice Antitrust Litigation, 723 F. Supp. 2d 987, 1011-12 (E.D. Mich. 2010) (observing that "civil litigation" cannot be "circumscribed or defined by the boundaries of the criminal investigations") (citing In re Vitamins Litig., No. 99-misc-197, 2000 WL 1475705 at *11 (D. D.C. May 9, 2000) (rejecting the "notion that the guilty pleas and cooperation agreements and the class settlement foreclose a broader conspiracy. Guilty pleas are negotiated instruments which take into account not only the culpability of the accused but the Justice Department's resources and other cases requiring the government's attention.").

6

Here, Plaintiffs do not rely on TR's admitted conspiracy to fix the price of heater control panels as a basis for involvement in a conspiracy to fix the price of wire harness systems, even as Plaintiffs argue it renders participation more likely.  TR's guilty plea occurred after the complaints were filed.  In this case, there are factual allegations to support the conspiracy claims with respect to the wire harness systems, in addition to the guilty plea with respect to heater control panels.

As for Defendants' challenge to the agency relationship between TRAM and TR, the Court finds the complaints sufficiently allege an agency relationship.  Direct Purchaser Plaintiffs have alleged that the activities of TRAM "were under the direction and control of defendant Tokai Rika." (Doc. No. 86 at ¶ 62).  Indirect Purchaser Plaintiffs, ADPs and EPPs, have alleged that Tokai Rika directly or through its subsidiaries, which it wholly owned and/or controlled "manufacture, marketed, and/or sold automotive Wire harness Systems that were purchased throughout the United States." (Doc. No. 85 at ¶¶ 116, 122; Doc. No. 174 at ¶¶ 115, 121).  In addition to the relationship as characterized by the complaints, there is further support of the relationship inasmuch as TR pleaded guilty to conduct that occurred at TRAM.  Defendants reliance on In re Title Ins. Antitrust Cases, 702 F. Supp. 2d 840, 877 (N.D. Ohio 2010), to support their position to the contrary is misplaced.   Although the court addressed claims involving a parent and a subsidiary company, the resolution in In re Title Ins. Antitrust Cases, turned not on the sufficiency of allegations, but on the fact that the claims against the subsidiary defendants were barred by the filed rate doctrine, which is not relevant to this case.  Once the court determined that the doctrine barred the claims against the subsidiary, it deemed the claims against the parent likewise to be

barred. The other case relied upon by Defendants, Cupp v. Alberto-Culver USA, Inc.. 310 F. Supp. 2d 963, 971 (W. D. Tenn. 2004) (dismissing complaint because the plaintiff failed to adequately define the relevant market), also fails to persuade this Court that a different outcome is required. In Cupp, the plaintiff included the parent as a defendant based solely on the existence of a corporate relationship. Id. at 973. The court correctly declined to "presume that a parent company participates in every decision or action of its subsidiary." Id. (citing Mitchael v. Intracorp, Inc., 179 F.3d 847, 857 (10th Cir.1999) (declining to hold that a subsidiary and its parent can be considered a single entity for all § 1 purposes, without some specific evidence of coordinated activity). The court added that the complaint failed to indicate whether the subsidiary was wholly owned or that the parent and subsidiary operated as a single enterprise. Id. at 974. In contrast, here Plaintiffs have alleged that TRAM was wholly owned and controlled by TR. In sum, Plaintiffs have met their pleading burden.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** the motion.

**IT IS SO ORDERED.**

s/Marianne O. Battani<br>
MARIANNE O. BATTANI<br>
UNITED STATES DISTRICT JUDGE

Date: June 6, 2013

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

                                                s/Bernadette M. Thebolt

                                                Case Manager