# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____
                                    :
In Re: AUTOMOTIVE PARTS             :
ANTITRUST LITIGATION                :    **Master File No. 12-md-02311**
                                    :
_____   :    **Oral Argument Requested**
                                    :
THIS DOCUMENT RELATES TO:           :    **2:12-cv-00100-MOB-MKM**
                                    :
Product(s): Wire Harnesses          :
                                    :
All Actions                         :
_____

## DEFENDANT LEAR CORPORATION'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND FOR A STAY OF PROCEEDINGS PENDING APPEAL

Pursuant to 28 U.S.C. § 1292(b), Defendant Lear Corporation ("Lear"), by and through its attorneys, respectfully requests that the Court certify the Opinion and Order denying Lear's Motion to Dismiss entered on June 6, 2013 (2:12-cv-00100 Dkt. No. 140 ("June 6 Order") (Ex. A)) for interlocutory appeal to the United States Court of Appeals for the Sixth Circuit, and that it stay all proceedings relating to Lear (other than as agreed by the parties) in the interim and pending resolution of any resulting appeal. In support of the forgoing Motion, Lear states as follows:

1.     On May 14, 2012, Plaintiffs filed the Automobile Dealers Consolidated Class Complaint (12-md-02311 ("MDL") Dkt. No. 85), the Direct Purchasers' Consolidated Amended Class Action Complaint (MDL Dkt. No. 86), and the End-Payors' Consolidated Amended Class Action Complaint (MDL Dkt. No. 87, later amended at MDL Dkt. No. 174) (collectively, the "Complaints").

2.     On July 13, 2012, Lear filed a motion to dismiss the Complaints (MDL Dkt. No. 237). One of the grounds for the motion was that the Complaints failed to plausibly allege that Lear was a member of, or participated in, a conspiracy to rig bids and fix prices of wire harnesses.

3.     The Court's June 6 Order denied Lear's motion to dismiss, concluding that the Complaints' allegations of anticompetitive behavior among market participants, market conditions that provided opportunity for collusion, Lear's five percent market share, and Lear's ownership of stock in a separately incorporated entity in which another market participant that had pled guilty also owned stock satisfied the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

4.     Lear bases this motion upon its accompanying brief in support of its Motion, oral argument of counsel, and such other and further material as the Court may consider.

5.     As required by E.D. Mich. L.R. 7.1(a), counsel for Lear Corporation, Andrew S. Marovitz, sought concurrence from counsel for the Direct Purchaser, Automobile Dealer and End-Payor Plaintiffs on June 14 and 19, 2013. During those calls, counsel for Lear Corporation explained the nature of the motion and its legal bases, and requested but did not obtain concurrence in the relief sought (certification of the June 6 Order for interlocutory appeal).

6.     In addition, in order to avoid unnecessary disputes, and to ensure that the pleading phase of the case continues to proceed on a uniform and efficient schedule, Lear agreed to stipulate that it would answer the Complaints on the same date (July 31) as the other defendants, notwithstanding the submission of this Motion, so long as Plaintiffs agreed that Lear's filing of Answers would not compromise Lear's right to obtain the interlocutory relief sought by this Motion and would not bear in any way upon the merits of this Motion.  The End-Payor and Automobile Dealer Plaintiffs agreed yesterday to this proposal in its entirety; the Direct Purchasers also agreed to allow Lear and the other defendants until July 31 to answer, but took no position with respect to the rest of the proposal.

WHEREFORE, for the reasons stated herein, and in the accompanying brief in support hereof, Lear respectfully requests that the June 6 Order be certified for interlocutory appeal, and that all proceedings against it (other than as agreed by the parties) be stayed pending resolution of that appeal.

Dated: June 20, 2013              Respectfully submitted,

/s/ Andrew S. Marovitz
Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 S. Wacker Drive
Tel: 312-782-0600
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

Howard B. Iwrey (P39635)
Dante Stella (P60443)
DYKEMA GOSSETT PLLC
39577 Woodward Ave.
Bloomfield Hills, Michigan 48304
Tel: 248-203-0526
hiwrey@dykema.com
dstella@dykema.com

*Attorneys for Defendant Lear Corporation*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| _____ | : | |
| In Re: AUTOMOTIVE PARTS | : | |
| ANTITRUST LITIGATION | : | **Master File No. 12-md-02311** |
| | : | |
| _____ | : | **Oral Argument Requested** |
| | : | |
| THIS DOCUMENT RELATES TO: | : | **2:12-cv-00100-MOB-MKM** |
| | : | |
| Product(s): Wire Harnesses | : | |
| | : | |
| All Actions | : | |
| _____ | : | |

# DEFENDANT LEAR CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND FOR A STAY OF PROCEEDINGS PENDING APPEAL

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Court should certify the June 6 Order for interlocutory appeal under 28 U.S.C. § 1292(b) where the June 6 Order involves a controlling question of law for which there is a substantial ground for difference of opinion and for which an immediate appeal may materially advance the ultimate termination of the litigation.

2.      If the Court certifies its June 6 Order for interlocutory appeal, whether the Court should stay all proceedings in this matter relating to Lear (other than as agreed by the parties) pending resolution of the appeal.

## STATEMENT OF CONTROLLING
## <u>OR MOST APPROPRIATE AUTHORITIES</u>

28 U.S.C. § 1292(b)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169 (6th Cir. 1992)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................4

I.     THE COURT SHOULD CERTIFY THE JUNE 6 ORDER FOR
       INTERLOCUTORY APPEAL........................................................4

      A.    The June 6 Order Involves a Controlling Issue of Law. .....................7

      B.    There Is Substantial Ground for Difference of Opinion as to
          Whether the Complaints' Allegations Against Lear Are
          Sufficient. ....................................................................9

      C.    Immediate Appeal of the June 6 Order May Materially Advance
          the Ultimate Termination of the Litigation. .....................................14

II.    THIS COURT SHOULD STAY FURTHER PROCEEDINGS WITH
       RESPECT TO LEAR PENDING THE APPEAL TO THE SIXTH
       CIRCUIT. .............................................................................16

CONCLUSION .................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahrenholz v. Bd. of Trustees of Univ. of Ill.*,
    219 F.3d 674 (7th Cir. 2000) ................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................*passim*

*In re Auction Houses Antitrust Litig.*,
    164 F. Supp. 2d 345 (S.D.N.Y. 2001), *aff'd*, 42 F. App'x 511
    (2d Cir. 2002)........................................................................16

*In re Baker & Getty Fin. Servs., Inc.*,
    954 F.2d 1169 (6th Cir. 1992) .................................................5, 8, 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................*passim*

*Biegas v. Quickway Carriers, Inc.*,
    2007 WL 1675140 (E.D. Mich. June 11, 2007) .................................7

*Boland v. Consol. Multiple Listing Serv., Inc.*,
    868 F. Supp. 2d 506 (D.S.C. 2011), *aff'd and remanded sub nom.*
    *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278 (4th Cir. 2012) ...2, 8, 15

*Cardwell v. Chesapeake & Ohio Ry.*,
    504 F.2d 444 (6th Cir. 1974) ................................................................5

*In re Chocolate Confectionary Antitrust Litig.*,
    607 F. Supp. 2d 701 (M.D. Pa. 2009)....................................................8

*City of Dearborn v. Comcast of Mich. III, Inc.*,
    2008 WL 5084203 (E.D. Mich. Nov. 24, 2008)....................................9

*City of Detroit v. Mich.*,
    2013 WL 1340108 (E.D. Mich. Apr. 3, 2013) ...................................14

*In re Currency Conversion Fee Antitrust Litig.*,
    2002 WL 88278 (S.D.N.Y. Jan. 22, 2002) .......................................16

# TABLE OF AUTHORITIES
## (cont'd)

**Page (s)**

*DSM Desotech Inc. v. 3D Sys. Corp.*,
   2008 WL 4812440 (N.D. Ill. Oct. 28, 2008) .....................................................17

*Erie Cnty. v. Morton Salt, Inc.*,
   702 F.3d 860 (6th Cir. 2012) ..................................................................12

*Foster Wheeler Energy Corp. v. Metro. Knox Solid Waste Auth., Inc.*,
   970 F.2d 199 (6th Cir. 1992) ...................................................................8

*In re Graphics Processing Units Antitrust Litig.*,
   2007 WL 2127577 (N.D. Cal. July 24, 2007) ....................................................17

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007).........................................................13

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
   768 F. Supp. 2d 961 (N.D. Iowa 2011) .........................................................13

*Kraus v. Bd. of Cnty. Road Comm'rs*,
   364 F.2d 919 (6th Cir. 1966) ..................................................................3

*Leite v. Crane Co.*,
   2012 WL 1982535 (D. Haw. May 31, 2012).......................................................15

*Limestone Dev. Corp. v. Vill. of Lemont*,
   520 F.3d 797 (7th Cir. 2008) .................................................................16

*In re Lithium Ion Batteries Antitrust Litig.*,
   2013 WL 2237887 (N.D. Cal. May 21, 2013)......................................................16

*McFarlin, v. Conseco Servs., LLC*,
   381 F.3d 1251 (11th Cir. 2004) ................................................................7

*In re Managed Care Litig.*,
   2002 WL 1359736 (S.D. Fla. Mar. 25, 2002) ....................................................15

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009)............................................................................6

*Morris v. Philadelphia Hous. Auth.*,
   2011 WL 1661506 (E.D. Pa. Apr. 28, 2011)......................................................10

# TABLE OF AUTHORITIES
## (cont'd)

**Page (s)**

*Newsome v. Young Supply Co.*,
   873 F. Supp. 2d 872 (E.D. Mich. 2012) ............................................................8

*In re Packaged Ice Antitrust Litig.*,
   723 F. Supp. 2d 987 (E.D. Mich. 2010) ...........................................................13

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ............................................................................10

*In re Potash Antitrust Litig.*,
   667 F. Supp. 2d 907 (N.D. Ill. 2009), *aff'd sub nom. Minn-Chem, Inc. v.
   Agrium, Inc.,* 683 F.3d 845 (7th Cir. 2012), *petition for cert. filed*, 81
   U.S.L.W. 3309 (U.S. Nov. 23, 2012) ................................................................2

*Qatar Nat'l Navigation & Transp. Co. v. Citibank, N.A.*,
   1991 WL 210923 (S.D.N.Y. Oct. 8, 1991) .......................................................15

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ...........................................................................15

*In re Refrigerant Compressors Antitrust Litig.*,
   2012 WL 2114997 (E.D. Mich. June 11, 2012) ...............................................13

*Sims Varner & Assoc. v. Blanchard*,
   794 F.2d 1123 (6th Cir. 1986) .......................................................................4, 9

*In re Text Messaging Antitrust Litig.*,
   630 F.3d 622 (7th Cir. 2010) .......................................................................7, 14

*In re Travel Agent Comm'n Antitrust Litig.*,
   583 F.3d 896 (6th Cir. 2009) .............................................................5, 10, 11, 12

*Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*,
   648 F.3d 452 (6th Cir. 2011) ...........................................................................12

*Weisbarth v. Geauga Park Dist.*,
   499 F.3d 538 (6th Cir. 2007) ...........................................................................10

# TABLE OF AUTHORITIES
## (cont'd)

**Page (s)**

**Statutes, Rules and Regulations**

28 U.S.C. § 1292(b) ........................................................................*passim*

Fed. R. Civ. P. 8 ..............................................................................7

Fed. R. Civ. P. 12(b)(6)...................................................................8

**Miscellaenous**

16 Charles A. Wright et al., FEDERAL PRACTICE & PROCEDURE § 3930 (2d
 ed. West 2013) ..........................................................................5

Hon. Colleen McMahon, *The Law of Unintended Consequences:*
 *Shockwaves in the Lower Courts After* Bell Atlantic Corp. v. Twombly,
 41 Suffolk U. L. Rev. 851 (2008).................................................11

Arthur R. Miller, *From* Conley *to* Twombly *to* Iqbal*: A Double Play on the*
 *Federal Rules of Civil Procedure*, 60 Duke L.J. 1 (2010) .................10

S. Rep. No. 2434 (1958), *reprinted in* 1058 U.S.C.C.A.N. 5255.............3

# **INTRODUCTION**

Defendant Lear Corporation ("Lear") respectfully requests that the Court certify the Opinion and Order denying Lear's Motion to Dismiss entered on June 6, 2013 (2:12-cv-00100 Dkt. No. 140 (the "June 6 Order") (Ex. A)) for immediate appeal pursuant to 28 U.S.C. § 1292(b), and to stay all proceedings relating to Lear (other than as agreed by the parties) pending resolution of any resulting appeal.

In denying Lear's motion to dismiss, this Court concluded that, as to Lear, the Complaints[1] satisfied the plausibility standard of *Twombly* and *Iqbal* by alleging the existence of an antitrust conspiracy "in the wire harness market … coupled with the type of market conditions that facilitate anticompetitive conduct, Lear's [5%] market share, and its association with Furukawa," which had pled guilty to antitrust violations. June 6 Order (Ex. A) at 6-7. This conclusion followed the Court's analysis of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their application to general allegations of conspiracy against a defendant who has not pled guilty or admitted to wrongdoing in a marketplace where others have.

---

[1]    The "Complaints" are the Automobile Dealers Consolidated Class Complaint (2:12-md-02311 ("MDL") Dkt. No. 85), the Direct Purchasers' Consolidated Amended Class Action Complaint (MDL Dkt. No. 86) and the End-Payors' Consolidated Amended Class Action Complaint (MDL Dkt. No. 87, later amended at Dkt. No. 174).

This issue is a paradigm example of the sort of discrete, controlling and contestable legal issue that is appropriate for certification under Section 1292(b). The proper application of *Twombly* and *Iqbal* to antitrust conspiracy complaints is a question that has divided the courts. In similar circumstances district courts have certified (and appellate courts often have agreed to review) such questions. *See, e.g.*, *Boland v. Consol. Multiple Listing Serv., Inc.*, 868 F. Supp. 2d 506, 519 (D.S.C. 2011) (acknowledging the "difficulty and uncertainty" involved in applying the "certain recent Supreme Court decisions" in *Twombly* and *Iqbal* to a complaint alleging an antitrust conspiracy, "as well as the various (and sometimes conflicting) cases interpreting those decisions," and concluding that its denial of the motion to dismiss the claim "resolve[d] legal questions as to which substantial ground for difference of opinion exists" and should be certified), *aff'd and remanded sub nom. Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278 (4th Cir. 2012); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 937 (N.D. Ill. 2009) (recognizing that determining the sufficiency of antitrust conspiracy allegations "present[s] a difficult question under *Twombly*" and certifying for appeal its denial of defendants' motion to dismiss), *aff'd sub nom. Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012), *petition for cert. filed*, 81 U.S.L.W. 3309 (U.S. Nov. 23, 2012) (No. 12-650). Indeed, Congress specifically had "antitrust . . . cases" in mind when it enacted Section 1292(b) for the purpose of "'avoid[ing] protracted

and expensive litigation.'" *Kraus v. Bd. of Cnty. Road Comm'rs*, 364 F.2d 919, 921 (6th Cir. 1966) (quoting S. Rep. No. 2434 (1958), *reprinted in* 1058 U.S.C.C.A.N. 5255, 5260-61).

The particular issue presented here unquestionably is a contestable one for which certification is appropriate.  Furthermore, it is an issue of first impression that has not been addressed by the Sixth Circuit. Indeed, Lear is not aware of a single post-*Twombly* case in the Sixth Circuit in which any court upheld the sufficiency of a complaint based only upon guilty pleas of market participants *other* than the defendant in the suit, that defendant's market share, purported opportunities to conspire and the market structure of the industry.

While the June 6 Order that is the subject of this Motion addressed claims against only one defendant in the *Wire Harness Litigation*, its effects will be felt far beyond this immediate litigation: the *Wire Harness* cases are but the first in this sprawling and massive antitrust multidistrict litigation before the Court, which currently also includes cases involving instrument panel clusters, fuel senders, heater control panels, bearings, occupant safety systems, alternators, anti-vibration rubber parts, windshield wipers, radiators and starters. *See* Agenda for the March 13, 2013 Status Conference, MDL Dkt. No. 509 (Mar. 8, 2013) (listing pending cases) (Ex. B). It may include even more parts. *See, e.g., Barron et al. v. Koito Manufacturing Co., Ltd. et al.* (No. 2:13-cv-12483) (E.D. Mich.) (involving

automotive lamps). The Court's holding in its June 6 Order could affect many, if not all, of the remaining cases, particularly those involving defendants who have not pled guilty while others in the marketplace have. Prompt appellate review of the June 6 Order should be permitted both to ensure the most efficient and accurate resolution of this large, and growing, MDL matter and to allow the Sixth Circuit an opportunity to provide guidance in an area of law that is beset with uncertainty. Such review should proceed as soon as possible. As the Sixth Circuit has explained, "[t]he notion supporting interlocutory jurisdiction is to give a party the opportunity to prevent an irreparable harm at an early stage when that opportunity will not exist upon a final disposition of the case." *Sims Varner & Assoc. v. Blanchard*, 794 F.2d 1123, 1128 (6th Cir. 1986). The only way to protect Lear (and potentially others) from the enormous and irreparable expense and burden of discovery in this sprawling antitrust case is to stay all proceedings against it (other than as agreed by the parties) during the pendency of this motion and any associated appeal. *See* Motion ¶ 6.

## ARGUMENT

### I.  THE COURT SHOULD CERTIFY THE JUNE 6 ORDER FOR INTERLOCUTORY APPEAL.

Certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is appropriate where (1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the

decision and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 (6th Cir. 1992). Measured against these "flexible" requirements (16 Charles A. Wright et al., FEDERAL PRACTICE & PROCEDURE § 3930 (2d ed. West 2013)), the June 6 Order decided a debatable and controlling legal issue warranting interlocutory review:

> **ISSUE TO BE DECIDED**: **Whether general allegations of anticompetitive conduct, market structure and opportunities to conspire as co-investors or attendance at trade shows—allegations that otherwise would be deficient under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)—are saved by charges that others in the market pled guilty to antitrust violations. *See In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009) (applying *Twombly*).**

This issue meets all three criteria for interlocutory certification: it is an issue of pure law directly controlling the outcome of this case, about which there is substantial ground for difference of opinion, and there is no doubt that an immediate appeal on this issue "may avoid protracted and expensive litigation." *In re Baker*, 954 F.2d at 1172 (quoting *Cardwell v. Chesapeake & Ohio Ry.*, 504 F.2d 444, 446 (6th Cir. 1974)); *see also* 16 FEDERAL PRACTICE & PROCEDURE § 3929 (interlocutory review is "especially suitable" for use in "exceptionally complex" cases where immediate appellate review might avoid "protracted and expensive litigation"). And although that is enough to warrant certification, immediate appellate review is particularly appropriate here because proper resolution of the

question presented is a matter of great practical importance, not only for the *Wire Harness* cases but also for the other cases within this MDL and for the management of antitrust cases generally.

Certifying an issue for interlocutory appeal is not an admission of error by the district court; instead, it follows from recognition that the statutory criteria for interlocutory review are satisfied, and that judicial efficiency and economy would best be served by an immediate appeal. Indeed, as the courts of appeals have recognized, it is "the duty of [a] district court . . . to allow an immediate appeal to be taken when the statutory criteria are met." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000); *see* 28 U.S.C. § 1292(b) ("When a district judge . . . shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he *shall* so state in writing in such order.") (emphasis added)). As the Supreme Court has said, "[d]istrict courts should not hesitate to certify an interlocutory appeal" when a case "involves a . . . legal question . . . of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009). This case involves just such a question.

### A.      The June 6 Order Involves a Controlling Issue of Law.

The sufficiency of the allegations with respect to Lear's participation in a conspiracy—particularly whether allegations of *co-defendants'* admissions of anticompetitive conduct are enough to save an otherwise deficient conspiracy claim—is purely an issue of law that is controlling in these cases. The June 6 Order did not turn on contested factual questions, as the factual allegations contained in Complaints were taken to be true. Instead, the Order rested on a wholly legal determination: the interpretation and application of the *legal standard* set forth in Rule 8 of the Federal Rules of Civil Procedures, as interpreted by *Twombly* and *Iqbal*, to determine the sufficiency of the Complaints' allegations against Lear. This is precisely the type of question of law that the Sixth Circuit "'can decide quickly and cleanly without having to study the record.'" *Biegas v. Quickway Carriers, Inc.*, 2007 WL 1675140, at *2 (E.D. Mich. June 11, 2007) (Ex. C)[2] (quoting *McFarlin, v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004)), *aff'd in part, rev'd in part*, 573 F.3d 365 (6th Cir. 2009). As numerous courts have held, the application of *Twombly* and *Iqbal* to determine the sufficiency of antitrust allegations is an issue of law appropriate for interlocutory review. *See, e.g.*, *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625 (7th Cir. 2010) (agreeing to hear interlocutory appeal of an order denying dismissal of antitrust complaint,

---

[2]      Exhibit C collects, in alphabetical order, the unpublished opinions cited in this brief.

explaining, "in this case we have neither factfindings nor the application of a legal standard to factfindings; the question presented by the appeal is the sufficiency of the allegations of a complaint; and, most important, that question requires the interpretation, and not merely the application, of a legal standard—that of *Twombly*"); *Boland*, 868 F. Supp. 2d at 519 (certifying for appeal an order denying dismissal of antitrust conspiracy claim in order to determine correct interpretation of *Iqbal* and *Twombly*); *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 708 (M.D. Pa. 2009) (certifying for appeal an order denying dismissal of antitrust conspiracy claim, explaining the issue "directly confront[s] *Twombly*'s effect on the law of pleading and its application to antitrust complaints subject to a Rule 12(b)(6) motion"); *cf. Foster Wheeler Energy Corp. v. Metro. Knox Solid Waste Auth., Inc.*, 970 F.2d 199, 200 (6th Cir. 1992) (hearing interlocutory appeal of denial of motion to dismiss). Just as in those cases, this Court's interpretation and application of *Twombly* and *Iqbal* to the Complaints against Lear is an issue of law.

This issue of law is also controlling. As the Sixth Circuit has explained, "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal *could* materially affect the outcome of litigation in the district court." *In re Baker*, 954 F.2d at 1172 n.8 (emphasis added; quotation marks omitted); *cf. Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 875-76 (E.D.

Mich. 2012) (noting "a low bar for a determination that a question of law is 'controlling' in the context of a motion for certification under § 1292(b)"). A decision by the Sixth Circuit concluding that the Complaints' conspiracy allegations against Lear are insufficient surely would do that, eliminating Lear from the cases. Indeed, a decision by the Sixth Circuit either reversing *or* affirming the June 6 Order would guide this Court's application of *Twombly* and *Iqbal* to the numerous remaining complaints in this vast multidistrict litigation, particularly with respect to the many other defendants in the other *In re Automotive Parts* cases that, like Lear, did not plead guilty and likely will raise the same types of legal arguments. *See* Agenda for the March 13, 2013 Status Conference (Ex. B) (listing pending cases). Thus, allowing appeal of the June 6 Order surely "could materially affect the outcome" of this litigation. It is best to have such material questions answered at the beginning of litigation, rather than at the end. *See Sims*, 794 F.2d at 1128.

### B. There Is Substantial Ground for Difference of Opinion as to Whether the Complaints' Allegations Against Lear Are Sufficient.

The second requirement for certification also is satisfied here. Substantial ground for a difference of opinion on the issue raised by an interlocutory order exists "when: (1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a

difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *City of Dearborn v. Comcast of Mich. III, Inc.*, 2008 WL 5084203, at *3 (E.D. Mich. Nov. 24, 2008). As demonstrated below, the June 6 Order turns on a question of first impression in the Sixth Circuit: whether a complaint containing some allegations that the Sixth Circuit has ruled are deficient is saved by another allegation that co-defendants pled guilty to antitrust violations.

Even if it were not for this unanswered question in the Sixth Circuit, the proper application of the pleading standards announced in *Twombly* and *Iqbal*— still relatively recent decisions—remains a challenging area of law. *Cf. In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 912 (6th Cir. 2009) (Merritt, J., dissenting) ("As with any other new, general legal standard, the nature and meaning of the newly modified [*Twombly*/*Iqbal*] standard can be understood and followed only by analyzing how the standard is applied in actual cases . . . ."). There is general recognition at the appellate level that the standard is "confusing" (*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230, 234 (3d Cir. 2008)), and has generated "[s]ignificant uncertainty" (*Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007) (quotation marks omitted)). *See also Morris v. Philadelphia Hous. Auth.*, 2011 WL 1661506, at *3 (E.D. Pa. Apr. 28, 2011) (Ex. C) ("The undersigned, formerly a member of the Advisory Committee on Civil Rules, knows that many practitioners and judges share in the confusion resulting

from *Iqbal*[] . . . ."); Arthur R. Miller, *From* Conley *to* Twombly *to* Iqbal*: A Double Play on the Federal Rules of Civil Procedure*, 60 Duke L.J. 1, 30–31 (2010) (describing "confusion and disarray among judges and lawyers" in applying *Iqbal*); Hon. Colleen McMahon, *The Law of Unintended Consequences: Shockwaves in the Lower Courts After* Bell Atlantic Corp. v. Twombly, 41 Suffolk U. L. Rev. 851, 853 (2008) ("We district court judges suddenly and unexpectedly find ourselves puzzled over something we thought we knew how to do with our eyes closed: dispose of a motion to dismiss a case for failure to state a claim.").

Against this background, in holding that the Complaints sufficiently alleged the participation of Lear in a wire harness conspiracy, the Court in its June 6 Order applied *Twombly* and *Iqbal*, and concluded that, as to Lear, that "[t]he fact that an antitrust conspiracy in the wire harness market existed when coupled with the type of market conditions that facilitate anticompetitive conduct, Lear's market share, and its association with Furukawa [which had pled guilty to antitrust violations], when considered in total" were enough to "raise a reasonable expectation that discovery will reveal additional evidence of illegal agreements relative to Lear." June 6 Order (Ex. A) at 6-7. We respectfully suggest that this conclusion is debatable.

At least two of these same factors were present in *In re Travel Agent*, 583 F.3d 896. There, the Sixth Circuit applied *Iqbal* and *Twombly* to allegations of

parallel conduct and frequent opportunities to collude in an industry whose structure could facilitate anticompetitive conduct (*i.e.* market concentration and high barriers to entry). The Sixth Circuit concluded that those allegations were *not* sufficient to state an antitrust conspiracy claim in the wake of *Twombly* and *Iqbal* because they failed sufficiently to exclude the possibility that the specific defendant was acting independently. *Id.* at 905-06; *see also Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 457 (6th Cir. 2011).

In light of *In re Travel Agent*, it is clear that market structure and opportunities to collude are insufficient in the Sixth Circuit to satisfy *Twombly* and *Iqbal*. Likewise, general "market conditions" in the wire harness industry and Lear's purported "opportunities" to collude with Furukawa (several years ago, both were shareholders in a separately incorporated Delaware corporation, which also is a separate defendant in this litigation) and others would not meet the standard either. The remaining, pivotal issue here is whether the guilty pleas of Furukawa and other co-defendants are sufficient to save Complaints that otherwise would not satisfy the *Twombly*/*Iqbal* standard.[3]

This is an issue of first impression. While the Sixth Circuit has discussed the pleading standard under *Twombly*/*Iqbal*, it has not yet decided whether the

---

[3]     As the Court recognized, the complaints "do not allege that Furukawa was Lear's partner in the joint venture," but only that Furukawa and Lear each owned shares of a separately incorporated joint venture. June 6 Order at 6 (Ex. A).

combination of these general, marketplace factors along with a guilty plea by a co-defendant or co-defendants satisfies the plausibility standard. *Cf. Erie Cnty. v. Morton Salt, Inc.*, 702 F.3d 860, 869-73 (6th Cir. 2012) (applying *Iqbal* and *Twombly* to hold that complaint's allegations regarding participation in a conspiracy were insufficient). Several district courts have considered similar but not identical issues. *See, e.g.*, *In re Refrigerant Compressors Antitrust Litig.*, 2012 WL 2114997, at *7-8 (E.D. Mich. June 11, 2012) (Ex. C) (dismissing antitrust conspiracy complaint against defendants despite co-defendants pleading guilty); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 975 (N.D. Iowa 2011) (dismissing antitrust conspiracy complaint against defendants despite numerous defendants admitting to bilateral price-fixing arrangements); *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 998-99, 1006-12 (E.D. Mich. 2010) (concluding that guilty pleas by or raids of *all defendant groups* supported a broader conspiracy allegation); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (concluding that investigation of defendants by "the Antitrust Division of the Department of Justice . . . carries no weight in pleading an antitrust conspiracy claim"). Certification of the June 6 Order for appeal before this case or the others in this sprawling MDL matter move forward would give the Sixth Circuit a timely and much needed opportunity to address this important issue before it recurs in this case and others.

13

**C.     Immediate Appeal of the June 6 Order May Materially Advance the Ultimate Termination of the Litigation.**

As for the third Section 1292(b) factor, allowing appeal of the June 6 Order may materially advance the ultimate termination of the litigation because reversal by the Sixth Circuit would "avoid protracted and expensive litigation" (*In re Baker*, 954 F.2d at 1172 (quotation marks omitted)) as to Lear. It would "save judicial resources and litigant expense" (*City of Detroit v. Mich.*, 2013 WL 1340108, at *3 (E.D. Mich. Apr. 3, 2013) (Ex. C) (quotation marks and alterations omitted)) by allowing Lear to avoid extensive discovery, motion practice and the substantial costs associated with defending the *Wire Harness Litigation*. As Lear has not pled guilty to—or even been contacted by the Department of Justice about—criminal antitrust violations as part of the government's ongoing investigation, Lear is meaningfully different from many of the other defendants in this case. A reversal on appeal eliminating Lear from the *Wire Harness Litigation* would materially reduce the scope and cost of discovery and simplify the issues for further motion practice and trial. The enormous expense to Lear in defending these cases and the additional judicial resources that would be devoted to overseeing that discovery, deciding motions and the like would be irretrievable. In such circumstances, assuring the correct resolution of this fundamental legal issue at the outset is of paramount importance. *See, e.g.*, *In re Text Messaging*, 630 F.3d at 626 (accepting certification in a similar case and warning that "misappl[ication of] the

14

*Twombly* standard" in a large and complex antitrust case "bids fair to immerse the parties in the discovery swamp . . . and by doing so create[s] irrevocable as well as unjustifiable harm to the defendant that only an immediate appeal can avert"); *Boland*, 868 F. Supp. 2d at 519 (certifying appeal in antitrust conspiracy case to "guard[] against the[] very real concern[]" of erroneously allowing "lengthy and costly discovery").

That this material advancement would accrue to Lear but not to defendants more generally does not affect this conclusion. "[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see also, e.g.*, *Leite v. Crane Co.*, 2012 WL 1982535, at *7 (D. Haw. May 31, 2012) (Ex. C); *In re Managed Care Litig.*, 2002 WL 1359736, at *1 (S.D. Fla. Mar. 25, 2002) (Ex. C); *Qatar Nat'l Navigation & Transp. Co. v. Citibank, N.A.*, 1991 WL 210923, at *1 (S.D.N.Y. Oct. 8, 1991) (Ex. C). And when "reversal 'may' take . . . a defendant . . . out of the case," it "is sufficient to advance materially the litigation." *Reese*, 643 F.3d at 688.

Indeed, as we have noted, practical considerations make the need for immediate review in this case especially acute. Many individual cases in this vast multidistrict litigation will present issues similar, or identical, to the one here;

getting definitive resolution of the controlling standard at the outset would guide the resolution of all of those cases. In this setting, the Court's decision concerns an issue "of unusual significance" that has "practical importance going well beyond run-of-the-mill concerns of parties before the Court." *In re Auction Houses Antitrust Litig.*, 164 F. Supp. 2d 345, 348 (S.D.N.Y. 2001), *aff'd*, 42 F. App'x 511 (2d Cir. 2002). For this reason as well, Section 1292(b) certification of the June 6 Order is warranted.

## II.   THIS COURT SHOULD STAY FURTHER PROCEEDINGS WITH RESPECT TO LEAR PENDING THE APPEAL TO THE SIXTH CIRCUIT.

The Court should stay all further proceedings with respect to Lear, other than as agreed by the parties (*see* Motion ¶ 6), while considering the instant motion. If the Court grants the motion to certify the question presented for interlocutory appellate review, Lear respectfully requests that the Court continue the stay as to Lear pending resolution of the appeal.

Discovery in this case will be extremely time consuming and expensive. *See Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) ("discovery is likely to be more than usually costly" in "complex antitrust" cases); *In re Lithium Ion Batteries Antitrust Litig.*, 2013 WL 2237887, at *2 (N.D. Cal. May 21, 2013) (Ex. C) ("Courts acknowledge that antitrust discovery can be enormously expensive and burdensome."); *In re Currency Conversion Fee*

*Antitrust Litig.*, 2002 WL 88278, at *3 (S.D.N.Y. Jan. 22, 2002) (Ex. C) (granting stay, acknowledging the "the substantial cost of discovery typical of antitrust cases of this magnitude"). The Supreme Court has cautioned that "[t]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery" in cases like this unless and until absolutely necessary. *Twombly*, 550 U.S. at 558 (quotation marks omitted); *see also DSM Desotech Inc. v. 3D Sys. Corp.*, 2008 WL 4812440, at *3 (N.D. Ill. Oct. 28, 2008) (Ex. C) ("Absent circumstances presenting a compelling need for prompt discovery . . . the principles underlying *Twombly* counsel in favor of granting defendants' motion to stay.") (citing *In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577, at *4-5 (N.D. Cal. July 24, 2007) (Ex. C) ("To be sure, to allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly*, at least when the discovery would be burdensome.")).

Here, there would be little sense in forcing Lear to move forward in the short term, through the expensive and invasive process of discovery, when resolution of the question presented may end this litigation against it on the pleadings. As continued adjudication of this case with respect to Lear would be expensive and irremediable for both sides, and as the case will continue—including what is sure to be lengthy discovery—against the remaining defendants, Plaintiffs cannot seriously argue that there is a compelling need for discovery from Lear before the

Sixth Circuit can consider this issue, much less that they would be prejudiced by a stay with respect to Lear. Accordingly, the Court should stay all proceedings (other than as agreed by the parties) with respect to Lear.

## **CONCLUSION**

For all the foregoing reasons—and to allow resolution of this significant, preliminary legal issue in the case—Lear respectfully requests that this Court certify its June 6 Order for interlocutory appellate review and stay all proceedings against Lear (other than as agreed by the parties) pending resolution of any resulting appeal.

18

Dated: June 20, 2013                    Respectfully submitted,

                                        /s/ Andrew S. Marovitz
                                        Andrew S. Marovitz
                                        Britt M. Miller
                                        MAYER BROWN LLP
                                        71 S. Wacker Drive
                                        Tel: 312-782-0600
                                        amarovitz@mayerbrown.com
                                        bmiller@mayerbrown.com

                                        Howard B. Iwrey (P39635)
                                        Dante Stella (P60443)
                                        DYKEMA GOSSETT PLLC
                                        39577 Woodward Ave.
                                        Bloomfield Hills, Michigan 48304
                                        Tel: 248-203-0526
                                        hiwrey@dykema.com
                                        dstella@dykema.com

                                        *Attorneys for Defendant Lear
                                        Corporation*

706740543

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew S. Marovitz, an attorney, hereby certify that on June 20, 2013, I caused a true and correct copy of the foregoing **DEFENDANT LEAR CORPORATION'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND FOR A STAY OF PROCEEDINGS PENDING APPEAL** and **BRIEF IN SUPPORT** to be filed and served electronically via the court's CM/ECF system. Notice of this Filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

Dated: June 20, 2013                    MAYER BROWN LLP

                                        /s/ Andrew S. Marovitz
                                        Andrew S. Marovitz
                                        Attorney for Defendant Lear Corp.
                                        71 S. Wacker Drive
                                        Tel: 312-782-0600
                                        amarovitz@mayerbrown.com